FERNANDEZ v. NAGLE, Commissioner of Immigration.

No. 6466.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1932.

Philip Zwerin, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Raymond H. Schubert, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

SAWTELLE, Circuit Judge.

This is an appeal in a habeas corpus proceeding in which petitioner asks us to set aside an order of deportation. The only question before us is whether petitioner was accorded a fair hearing before the United States immigration officers.

The facts are these: Petitioner, Pedro Fernandez, a native of Spain and by occupation a laborer, entered the United States at Key West, Fla., October 25, 1922. On February 20, 1925, at San Francisco, Cal., he was interrogated by an immigration inspector as to his right to be and remain in the United States. At that time petitioner was an inmate of the Relief Home for the Aged and Infirm, an institution supported by state, county, and municipal funds, where he had been since July 31, 1924. It appears that he had also been an inmate of the same institution during the first four months of the latter year. Petitioner stated to the inspector that he had no money with which to pay for his maintenance, and was too weak and sick to earn a livelihood.

June 2, 1925, the Secretary of Labor issued a warrant for petitioner's arrest. This warrant charged that the latter had been found in the United States in violation of the Immigration Act of February 5, 1917 (39 Stat. 874), in that "he was a person likely to become a public charge at the time of his entry; and that he has become a public charge in the San Francisco Relief Home for the Aged and Infirm, San Francisco, Calif., within five years after his entry into the United States, from causes not affirmatively shown to have arisen subsequent thereto."

A hearing before the immigration officers was had on June 19, 1925, at which time petitioner was duly informed of his rights. He reaffirmed the statements made by him to the immigration inspector, and waived his right to be represented by an attorney. He further stated: "I want to go back to my country." "I want to go to Spain now because when I am well I want to come back to the United States. I would like to have some paper or something to show that I came here legally so that I can come back when I am well."

Petitioner also stated that he had worked a part of the time since coming to California, then was taken sick, and had not worked for the past twenty months. He had, at this time, a wife and three children living in Spain.

There was introduced in evidence at the hearing a certificate of a physician showing that on February 21, 1925, the physician personally examined the alien and found that he was afflicted with pneumoconiosis and coccigenous mycosis of the face. The certificate further recites: "Said disabilities are in my opinion not due to causes arising subsequent to the time when the alien landed in the United States, and I reach this conclusion upon the following facts and through the following processes of reasoning: Worked for years in iron mines of Spain before coming to the United States. According to his statements no extensive mining work was performed by him in this country. The chest condition does not come on in one or two months but generally after long period of time."

After the hearing, the immigration inspector found that the charges had been sustained and requested a warrant of deportation. Before the warrant of deportation, which was

dated July 20, 1925, was received, however, from the Secretary of Labor, petitioner, who had been released on his own recognizance and permitted to remain in the home above referred to, left the institution without giving notice, and was not rearrested until December 22, 1930. At this latter time he was charged with being drunk, and later was turned over to the immigration authorities.

On December 23, 1930, the day after his arrest, petitioner was again interrogated by an immigration inspector, presumably for the purpose of identifying him as the alien who had been ordered deported. Petitioner admitted his identity, and testified that he was then unemployed, but had been employed by the Southern Pacific Company as a track laborer, and had accumulated approximately $50, a few pieces of household furniture, and a 1924 model automobile.

The Immigration Act of February 5, 1917, authorizes the deportation within a certain time of aliens entering or found in the United States in violation of law. Section 3 (i) of that act (8 USCA § 136(i), provides for the exclusion of "persons likely to become a public charge." Section 19 of the act (8 USCA § 155), provides: "At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; * * * any alien who within five years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

It is contended that the evidence of the physician above referred to shows that petitioner's physical "disabilities are not due to causes arising subsequent to the time when the alien landed in the United States, for the reason that the alien worked for years in the iron mines in Spain, and according to his statement did some mining work in this country, and the chest condition generally comes only after a long period of time, which affirmatively shows that the condition of petitioner did arise subsequent to his arrival here."

We think this contention is entirely without merit, and that the testimony, and all inferences to be drawn therefrom, clearly shows to the contrary. Furthermore, it is not within our province to review the findings of the immigration officials, unless in some particular their conduct was such as to render the hearing unfair. Ex parte Wong Nung, 30 F.(2d) 766 (C. C. A. 9).

Affirmed.